UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MARCOS RODRIGUEZ,
Petitioner

--against--

CA 07 - 329

WARDEN DAVID MCCAULEY AND
THE STATE OF RHODE ISLAND,
Respondents

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. 2254

The Petitioner seeks relief from an order of the Supreme Court of the State of Rhode Island, denying his appeal of an order of the Superior Court denying his motion to dismiss an indictment charging him with kidnapping with the intent to extort on the grounds of double jeopardy. The indictment, number P1/00-2232A, is attached hereto as Exhibit A. The decision of the Supreme Court, Opinion No. 2004-190-C.A. is attached hereto as Exhibit B.

## STANDING

A criminal defendant may collaterally appeal an adverse ruling on a defense of double jeopardy, ***Abney v. United States***, 431 U.S. 651, 660, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). See also Sell v. U.S., 539 U.S. 166, 123 S.Ct. 2174 (2003) and Will v. Hallock, 546 U.S. 345, 126 S.Ct. 952, 163 L.Ed.2d 836. Your Petitioner claims a constitutional right not to be tried.

The double jeopardy clause in the Fifth Amendment to the Constitution of the United States provides that no person shall "be subject for the same offence

to be twice put in jeopardy of life or limb". This constitutionally protected right is applicable to the State of Rhode Island through the Due Process Clause of the Fourteenth Amendment.

## FACTS AND PROCEDURAL HISTORY

On or about May 23, 1999, Ricardo Gomez was kidnapped in Rhode Island. Two days later his remains were found under the Whitestone Bride in the Bronx, New York. Police officials in New York and Rhode Island identified two alleged perpetrators, your Petitioner, Marcos Rodriguez and Edward Pozo. Both defendants were arrested in the State of New York.

The Attorney General for the State of Rhode Island made an extradition request for Edward Pozo. No request was filed for the extradition of Marcos Rodriguez.

The Grand Jury in the State of Rhode Island returned the instant indictment (Exhibit A). This indictment did not charge Marcos Rodriguez with the crime of murder.

The Grand Jury in the State of New York returned an indictment against Petitioner, Marcos Rodriguez, charging felony murder. The underlying felony was the kidnapping in the State of Rhode Island. This indictment did not charge Marcos Rodriguez with the substantive crime of kidnapping.

The Grand Jury in each state considered the evidence during the same time period and each indictment was filed at approximately the same time.

In December, 2001, Petitioner was tried and convicted in New York of second-degree felony murder and was sentenced to serve twenty-five years to

life. Under the Interstate Agreement on Detainers Act, your Petitioner was subsequently brought to Rhode Island to be tried for the underlying act of kidnapping.

Petitioner moved, under Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure to dismiss the indictment on double jeopardy grounds.

An evidentiary hearing was held on January 30, 2004 and February 3, 2004. An order denying defendant's motion was entered on April 18, 2005. A copy of that order is attached as Exhibit C.

The defendant moved the Supreme Court of the State of Rhode Island to stay his criminal trial pending appeal. That motion was granted on April 28, 2005.

On or about March 8, 2007, the Supreme Court of the State of Rhode Island denied Petitioner's appeal. (See Exhibit B).

## ISSUES OF LAW

1. Does federal law require the underlying felony in a felony-murder prosecution to be treated as a lesser included offense?

2. Does Article I of the Rhode Island Constitution and the Fifth Amendment to the United States Constitution prohibit successive trials for the same offense when the first trial convicted a defendant of felony murder and the second trial is for the underlying felony?

3. May the State of Rhode Island apply the dual sovereignty doctrine to conduct a second successive trial for a lesser-included offense when the initial trial for felony murder was conducted in the State of New York?

4. If the District Attorney in New York and the Attorney General in Rhode Island agreed in advance that Marcos Rodriguez would be indicted for felony murder in New York (but not for the substantive crime of kidnapping) and indicted for the substantive crime of kidnapping in Rhode Island (but not for the crime of murder) in order to deliberately circumvent a defendant's constitutionally protected rights does the exception to the dual sovereignty doctrine as set forth in Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) apply prohibiting the conduct of two successive trials for the same offense?

5. If the Constitution of the State of Rhode Island (Article I Section 7) prohibits two successive prosecutions for the same offense, is it selective prosecution and a violation of a defendant's right to due process of law and equal protection under the fourteenth amendment to the United States Constitution and a violation of the defendant's right to due process of law and equal protection under the Constitution of the State of Rhode Island (Article I Section 2 and Section10) to permit a second successive prosecution for the same offense where the initial trial was for felony murder and the second trial is for the underlying felony?

## ARGUMENT

### Does federal law require the underlying felony in a felony-murder prosecution to be treated as a lesser-included offense?

It is the appellant's position that when the conviction for the greater crime, felony murder, could not be had without conviction for the lesser crime, the kidnapping, the double jeopardy clause bars prosecution for the lesser crime

after conviction for the greater one. Harris v. Oklahoma, 433 U.S. 682; 97 S. Ct. 2912; 53 L. Ed. 2d 1054 (1977)

The Supreme Court of the United States in Illinois v. Vitale, 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d (1980) explained their reasoning in Harris v. Oklahoma (supra). They stated:

"In Harris, we held, without dissent, that a defendant's conviction for felony murder based on a killing in the course of an armed robbery barred a subsequent prosecution against the same defendant for the robbery....

[FN9] But for the purposes of the Double Jeopardy Clause, we did not consider the crime generally described as felony murder as a separate offense distinct from its various elements. Rather, we treated a killing in the course of a robbery as itself a separate statutory offense, and the robbery as a species of lesser-included offense."

In a concurring opinion in the case of Lewis V. United States, 523 U.S. 155, 118 S. Ct. 1135, 140 L.Ed.2d 271 (1998), Justice Scalia provides further insight to the distinction between Blockburger and Harris. Justice Scalia stated:

**"The Blockburger test, however, establishes what constituted the "same offence" for purposes of the traditional practice that underlies the Double Jeopardy Clause, U.S. Const., Amdt. 5. That constitutional guarantee not only assumes a scheme of "offences" much more orderly than those referred to by the ACA (since they are the offenses designed by a single sovereign), but also pursues policy concerns that are entirely different. When it is fair to try a defendant a second time has little to do with when it is desirable to subject a defendant to two separate criminal prohibitions. Thus, for example, double jeopardy law treats greater and lesser included offenses as the same, see, e.g. Harris v. Oklahoma, 433 U.S. 6892, 97 S. Ct. 2912, 53 L. Ed. 2d 1054 (1977) (per curiam), so that a person tried for felony murder cannot subsequently be prosecuted for the armed robbery that constituted the charged felony. That is fair enough;...."**

In Whalen v. United States, 445 U.S. 684, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980) the court prohibited a consecutive sentence for felony murder (the underlying felony being rape) and for the rape itself. The Court stated:

**"In this case, resort to the *Blockburger* rule leads to the conclusion that Congress did not authorize consecutive sentences for rape and for a killing committed in the course of the rape, since it is plainly not the case that "each provision requires proof of a fact which the other does not." A conviction for *killing in the course of a rape cannot be had without proving all the elements of the offense of rape. See *United States v. Greene*, 160 U.S.App.D.C. 21, 34, 489 F.2d 1145, 1158 (1973). Cf. *Harris v. Oklahoma*, 433 U.S. 682, 682-683, 97 S.Ct. 2912, 2912-13, 53 L.Ed.2d 1054. The Government contends that felony murder and rape are not the "same" offense under *Blockburger*, since the former offense does not in all cases require proof of a rape; that is, D.C.Code § 22-2401 (1973) proscribes the killing of another person in the course of committing rape *or* robbery *or* kidnapping *or* arson, etc. Where the offense to be proved does not include proof of a rape-- for example, where the offense is a killing in the perpetration of a robbery-- the offense is of course different from the offense of rape, and the Government is correct in believing that cumulative punishments for the felony murder and for a rape would be permitted under *Blockburger*. In the present case, however, proof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense. There would be no question in this regard if Congress, instead of listing the six lesser included offenses in the alternative, had separately proscribed the six different species of felony murder under six statutory provisions. It is doubtful that Congress could have imagined that so formal a difference in drafting had any practical significance, and we ascribe none to it. [FN8] To the extent that the Government's argument persuades us that the matter is not entirely free of doubt, the doubt must be resolved in favor of lenity. See *Simpson v. United States*, 435 U.S. 6, 14-15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70; see also n. 10, *infra*.**

**FN8. Contrary to the view of the dissenting opinion, we do not in this case apply the *Blockburger* rule to the facts alleged in a particular indictment. *Post*, at 1447-1449. We have simply concluded that, for purposes of imposing cumulative sentences under D.C.Code § 23- 112, Congress intended rape to be considered a lesser offense included within the offense of a killing in the course of rape."**

The same line of reasoning was utilized in U. S. V. Dixon, 509 U.S. 688, 113 S. Ct. 2189 (1993). In that case, the Supreme Court, Justice Scalia, held that: (1) double jeopardy protections apply to nonsummary criminal contempt prosecution; (2) double jeopardy precluded prosecution of defendant for drug offense following conviction for criminal contempt based on violation of conditional release order which included prohibition on violation of the drug laws; (3) double jeopardy precluded prosecution for assault on his wife following prosecution for criminal contempt for violating civil protection order which prohibited assault on her; (4) double jeopardy protections do not require that subsequent prosecution satisfy a "same conduct" test; and (5) prosecution for violation of civil protection order by assaulting his wife did not preclude subsequent prosecutions for assault with intent to kill and threatening to kidnap or injure another.

The Court stated:

**In this situation, in which the contempt sanction is imposed for violating the order through commission of the incorporated drug offense, the later attempt to prosecute Dixon for the drug offense resembles the situation that produced our judgment of double jeopardy in *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) *(per curiam).* There we held that a subsequent prosecution for robbery with a firearm was barred by the Double Jeopardy Clause, because the defendant had already been tried for felony murder based on the same underlying felony. We have described our terse *per curiam* in *Harris* as standing for the proposition that, for double jeopardy purposes, "the crime generally described as "felony murder" is not "a separate offense distinct from its various elements." *Illinois v. Vitale,* 447 U.S. 410, 420-421, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228 (1980). Accord, *Whalen v. United States,* 445 U.S. 684, 694, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980). So too here, the "crime" of violating a condition of release cannot be abstracted from the "element" of the violated condition. The *Dixon* court order incorporated the entire governing criminal code in the same manner as the *Harris* felony-murder statute incorporated the several enumerated felonies. Here, as in *Harris,***

**the underlying substantive criminal offense is "a species of lesser-included offense." [FN2] *Vitale, supra,* 447 U.S., at 420, 100 S.Ct., at 2267. Accord, *Whalen, supra.***

The Supreme Court has been consistent. Repeatedly, they address the underlying felony of a felony-murder prosecution as a lesser-included offence.

Given the extraordinary circumstances that Marcos Rodriguez has already been tried and convicted for felony murder, the underlying felony being the kidnapping in Rhode Island, it is respectfully asserted that the Rhode Island indictment should be barred by the double jeopardy clause as a matter of law.

The Attorney General of the State of Rhode Island concedes that the kidnapping of Ricardo Gomez is the same kidnapping that constituted the underlying felony in the felony murder prosecution in the State of New York.

The Supreme Court of the State of Rhode Island has consistently held that **"Rhode Island cases have hewed closely to federal double-jeopardy law when applying the analogous clause in the Rhode Island Constitution".** See Exhibit B, page 6, lines 15-16, State v. Grullon, 117 R.I. 682, 371 A.2d 265 (1977) and State v. Patel, (Not reported in A.2d, 2003 WL. 1227623 (R.I. Superior).

In the case of State v. Doyon, 416 A.2d 130, the Supreme Court of the State of Rhode Island held that the double jeopardy provisions of the Rhode Island Constitution and the United States Constitution were violated when a defendant was convicted and sentenced for both arson and of murder while in perpetration of arson.

**It is clear that the underlying felony in a felony murder prosecution, whether in federal court or in the State of Rhode Island, is treated as a lesser included offense.**

**<u>Does Article I, Section 7 of the Rhode Island Constitution and the Fifth Amendment to the United States Constitution prohibit successive trials for the same offense?</u>**

Article 1, Section 7 of the Rhode Island Constitution provides in pertinent part:

**"No person shall be subject for the same offense to be twice put in jeopardy."**

The double jeopardy clause in the Fifth Amendment to the Constitution of the United States provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb". This constitutionally protected right is applicable to the State of Rhode Island through the Due Process Clause of the Fourteenth Amendment.

The constitutional prohibition against double jeopardy has been held to consist of three separate guarantees:

1. "It protects against a second prosecution for the same offense after acquittal.

2. It protects against a second prosecution for the same offense after conviction.

3. It protects against multiple punishments for the same offense."

See <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656 (1969).

**May the State of Rhode Island apply the dual sovereignty doctrine to conduct a second successive trial for a lesser-included offense when the initial trial for felony murder was conducted in the State of New York?**

The Supreme Court of the State of Rhode Island has ruled that "when a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" Heath v. Alabama, 474 U.S. 82, 88 (1985) (quoting Lanza, 260 U.S. at 382).

The Supreme Court, in deciding Heath, ruled as follows:

**"Respondent does not contravene petitioner's contention that the offenses of "murder during a kidnapping" and "malice murder," as construed by the courts of Alabama and Georgia respectively, may be considered greater and lesser offenses and, thus, the "same" offense under *Brown* v. *Ohio, supra*, absent operation of the dual sovereignty principle. See *id*., at 169; *Illinois* v. *Vitale*, 447 U.S. 410 (1980). We therefore assume, *arguendo*, that, had these offenses arisen under the laws of one State and had petitioner been separately prosecuted for both offenses in that State, the second conviction would have been barred by the Double Jeopardy Clause."**

**"In applying the dual sovereignty doctrine, then, the crucial determination is whether the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns"**

It is the Petitioner's contention that the State of New York and the State of Rhode Island jointly acted in a manner deliberately designed to circumvent his constitutionally protected rights. In so doing they waived their right to be termed "separate sovereigns."

**If the District Attorney in New York and the Attorney General in Rhode Island agreed in advance that Marcos Rodriguez would be indicted for felony murder in New York (but not for the substantive crime of kidnapping) and indicted for the substantive crime of kidnapping in Rhode Island (but not for the crime of murder) in order to deliberately circumvent a defendant's constitutionally protected rights does the exception to the dual sovereignty doctrine as set forth in Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) apply prohibiting the conduct of two successive trials for the same offense?**

In U.S. v. Coker, 433 F.3d 39, C.A. 1 (Mass.) 2005 the court concerned itself with the issue of law enforcement seeking to make "end run" around a defendant's constitutionally protected rights. In that case, the right being considered was the defendant's sixth amendment right to counsel.

The Court recognized the Bartkus exception to the dual sovereignty doctrine as an aid to preventing such conduct. The court cited U.S. v. Guzman, 85 F.3d 823 C.A. 1 (Puerto Rico) 1996 as precedent. In Guzman the Court stated:

**"We find the gravitational pull of Bartkus irresistible indeed, we think that the exception is compelled by the bedrock principles of dual sovereignty. See United States v. Liddy, 542 F.2d 76, 799 (D.C.Cir 1976) ("Bartkus, as we view it stands for the proposition that federal authorities are proscribed from manipulating states process to accomplish that which they cannot constitutionally do themselves. To hold otherwise would, of course, result in a mockery of the dual sovereignty concept that underlies our system of criminal justice.")."**

In the instant case, Edward Pozo and Marcos Rodriguez were alleged to have been co-conspirators in the kidnapping of Ricardo Gomez. Both men were arrested in the State of New York. The State of Rhode Island extradited Edward Pozo to the State of Rhode Island. However, they made no such request for the extradition of Marcos Rodriguez.

Both the Assistant District Attorney in the Bronx County in New York and the Assistant Attorney General in Providence, Rhode Island have admitted they were in communication with one another. Key tapes necessary for the trial in Providence, Rhode Island were sent to New York and never retrieved. Martha Villalona, an accomplice and friend of the Petitioner and the key witness against him, was awarded pocket immunity by both prosecutors. Her testimony in both

jurisdictions would not have been available if either jurisdiction had commenced a criminal prosecution against her. Detectives from both New York City and Providence jointly executed a search warrant in Rhode Island.

It is agreed that most of these facts demonstrate no more than commendable cooperation between law enforcement officials.

Yet the joint decisions of the prosecutors went beyond "commendable cooperation". The two prosecutors agreed on a course of action deliberately designed to subject Marcos Rodriguez to two successive trials for the same offense. In so doing, they ceased to represent "separate sovereigns".

Like the biblical decision of King Solomon they agreed to divide the "baby" in half. The defendants were divided. Edward Pozo went to Rhode Island, Marcos Rodriguez stayed in New York. More importantly, both prosecutors presented the facts to their respective Grand Jury at approximately the same time. The resulting indictments constitute the "smoking gun" to their underlying agreement. Contrary to custom, the Grand Jury in the State of New York indicted Marcos Rodriguez for felony murder, the underlying felony being the kidnapping in Rhode Island but strangely, the indictment did not contain any substantive kidnapping count. At about the same time, contrary to custom, the Grand Jury in the State of Rhode Island indicted Marcos Rodriguez for a substantive count of kidnapping but strangely, the indictment did not contain any count for the death of the kidnapping victim during the course of the kidnapping (felony murder).

The coincidence is striking and is certainly strong circumstantial evidence of an agreement between the two prosecutors "to accomplish that which they cannot constitutionally do themselves" (U.S. v. Guzman, id.), that is subject Marcos Rodriguez to two successive trials for the same conduct.

As the Court stated in U.S. v. Guzman, id.:

**"To hold otherwise would, of course, result in a mockery of the dual sovereignty concept that underlies our system of criminal justice."**

The Court went on to erect a framework for deciding the issues of fact. The Court stated:

**In the Bartkus context, the question whether a defendant is being twice prosecuted for the same offense turns in part on the applicability of the dual sovereign rule. See Heath, 474 U.S. at 88, 106 S. Ct. at 437. Thus, the defendant must produce some evidence tending to prove that the rule should not apply. U.S. v. Guzman at 827.**

If the defendant proffers evidence sufficient to make a prima facie showing, the burden of proof then shifts to the State of Rhode Island to demonstrate that it acted as an independent sovereign.

Your Petitioner respectfully suggests that it constitutes a "mockery of justice" to lump the 50-50 agreement between the prosecutors in the State of New York and Rhode Island to divide the two defendants and the charges evenly between them with the otherwise commendable cooperation between law enforcement officials. The 50-50 agreement was not made for investigative purposes. It produced no evidence. This agreement was deliberately designed to circumvent Article 1, Section 2, Section 7and Section 10 of the Rhode Island Constitution and the applicable Rhode Island case law as well as the fifth and fourteenth amendments to the United States Constitution. The two prosecutors

"arranged" to subject Marcos Rodriguez to two successive trials for the same conduct. The 50-50 agreement had a discriminatory purpose.

It is respectfully contended that in arriving at this joint agreement, the State of Rhode Island ceased to act independently of New York and forfeited its right as a "separate" sovereign to rely on the doctrine of dual sovereignty.

Your Petitioner respectfully requests that this court order an evidentiary hearing to determine the truth of the matter.

**If the Constitution of the State of Rhode Island (Article I Section 7) prohibits two successive prosecutions for the same offense, is it selective prosecution and a violation of a defendant's right to due process of law and equal protection under the fourteenth amendment to the United States Constitution and a violation of the defendant's right to due process of law and equal protection under the Constitution of the State of Rhode Island (Article I Section 2 and Section 10) to permit a second successive vprosecution for the same offense where the initial trial was for felony murder and the second trial is for the underlying felony?**

The case law within the State of Rhode Island is clear. Two successive trials for the same offense is double jeopardy and is not permitted. See Exhibit B, page 6, lines 15-16, State v. Grullon, 117 R.I. 682, 371 A.2d 265 (1977), State v. Patel, (Not reported in A.2d, 2003 WL. 1227623 (R.I. Superior) Indeed, separate sentences for arson and murder while perpetrating arson are not permitted. State v. Doyon, 416 A.2d 130. Such prosecutions violate Article 1, Section 7 of the Rhode Island Constitution.

Assuming, ad arguendo, that the Bartkus exception does not apply and that the State of Rhode Island was acting as an independent sovereign, does the

dual sovereignty doctrine give the State of Rhode Island the right to ignore its own constitution and its own case law?

The Petitioner alleges that he is the victim of selective prosecution in violation of Article 1, Section 2 of the Rhode Island Constitution. He is the only individual in the State of Rhode Island to have ever been subjected to a second successive trial for the underlying felony after being convicted of felony murder.

The Petitioner alleges that the 50-50 agreement made by the Rhode Island prosecutor had a discriminatory purpose. Its purpose was to permit the prosecutor to conduct a second successive trial which he would not have been able to do if he had extradited Marcos Rodriguez to Rhode Island. He chose to extradite Edward Pozo. He chose not to extradite Marcos Rodriguez specifically to permit him to do what he could not constitutionally do otherwise, namely to subject Marcos Rodriguez to a second successive trial for the underlying felony of a felony murder.

**"An improper selective prosecution arises when a defendant "has been singled out for prosecution when others similarly situated have not been prosecuted and the prosecutor's reasons for doing so were impermissible."** U.S. v. Graham, 146 F.3d 6. See also U.S. v. Magana, 127 F.3d 1, 8 (1st Circ. 1997)

Selective prosecution is a subset of equal protection jurisprudence. The United States Supreme Court enunciated in Wayte v. United States, 470 U.S. 598, 608 (1985) that in order to prevail the petitioner must show that his prosecution was discriminatory in effect and also was motivated by a discriminatory purpose.

The Petitioner further alleges that he has been denied both procedural and substantive Due Process of Law under both the fourteenth amendment to the United States Constitution and Article 1, Section 10 of the Rhode Island Constitution.

Procedural due process compels the State of Rhode Island to use fair procedures. Substantive due process protects individuals against offensive, arbitrary and capricious government actions, despite the fact the seemingly fair procedures are used to implement them. Depoutot v. Raffaelly, 424 F.3d 112.

The Petitioner alleges that the 50-50 agreement made by the Rhode Island prosecutor constituted an unfair, offensive arbitrary and capricious government action the purpose of which was to permit the prosecutor to conduct a second successive trial which he would not have been able to do if he had extradited Marcos Rodriguez to Rhode Island. He chose to extradite Edward Pozo. He chose not to extradite Marcos Rodriguez specifically to permit him to do what he could not constitutionally do otherwise, namely to subject Marcos Rodriguez to a second successive trial for the underlying felony of a felony murder.

## CONCLUSION

Marcos Rodriguez has been subjected to double jeopardy. The dual sovereignty doctrine should not be applied because Rhode Island did not act as an independent sovereign and because of the Bartkus exception. An evidentiary hearing should be held to determine the true motive behind the Rhode Island prosecutor negotiating a 50-50 agreement with the New York prosecutor.

Even in the event that the dual sovereignty doctrine is applicable, that only means that the State of Rhode Island is not constrained by the Fifth Amendment to the United States Constitution. However, in all cases, the State of Rhode Island must follow its own Constitution and its own case law. It must provide all defendants with due process of law. It must not subject a defendant to selective prosecution. It must provide equal protection under its law.

Dated: August 28th, 2007

Respectfully submitted,

Raymond Sussman
Attorney for Marcos Rodriguez
Pro Hac Vice

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 29th, 2007

Marcos Rodriguez

CA07-329

**PETITION UNDER 28 USC SECTION 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

**UNITED STATES DISTRICT COURT** **DISTRICT OF RHODE ISLAND**

MARCOS RODRIGUEZ Prisoner No. INTAKE MOD E-212 ~~E-128~~1-B, 111006

SUPREME COURT CASE NO. 2004-190-C.A.
SUPERIOR COURT CASE NO. P1/00-2232A

PLACE OF CONFINEMENT: INTAKE CENTER, CRANSTON, RHODE ISLAND

MARCOS RODRIGUEZ V. DAVID MCCAULEY, WARDEN AND THE STATE OF RHODE ISLAND

THE ATTORNEY GENERAL OF THE STATE OF RHODE ISLAND

## PETITION

1. Names and location of Courts: Supreme Court of the State of Rhode Island and the Superior Court of the State of Rhode Island, both at 250 Benefit Street, Providence, Rhode Island

2. Date of Conviction: No conviction

3. Length of: Not Applicable

4. Nature of Offense involved: Two counts, Kidnapping with Intent to Extort and Conspiracy to Commit Kidnapping, See Exhibit A, pending indictment

5. What was your plea? Not Guilty

6. If you pleaded not guilty, what kind of trial did you have? No trial as yet.

7. Did you testify at the trial: Not applicable

8. Did you appeal from the judgment of conviction? I have filed an appeal from a pre-trial order denying my motion to dismiss on the grounds of double jeopardy.

9. Name of Court: Supreme Court of the State of Rhode Island
Result? My appeal was denied
Date of result: March 8, 2007 The opinion is attached as Exhibit B
Grounds raised: Double Jeopardy,
I have not filed a petition for certiorari in the United States Supreme Court.

10. Have you previously filed any motion? Yes

11. Prior to the appeal, I filed a motion to dismiss on the grounds of double jeopardy in the Superior Court of the State of Rhode Island. I received an evidentiary hearing. The motion was denied on February 3, 2004. I then perfected my appeal to the Supreme Court of the State of Rhode Island.

12. Ground One: Violation of Fifth Amendment to the United States Constitution to be protected against double jeopardy.

Ground Two: Violation of Article I, Section 7of the Rhode Island Constitution to be protected against double jeopardy.

Ground Three: Violation of Fourteenth Amendment to the United States Constitution, deprived of Due Process of Law

Ground Four: Violation of Article I, Section 10 of the Rhode Island Constitution, deprived of due process of law.

## SUMMARY OF SUPPORTING FACTS

On or about May 23, 1999, Ricardo Gomez was kidnapped in Rhode Island. Two days later his remains were found under the Whitestone Bride in the Bronx, New York. Police officials in New York and Rhode Island identified two alleged perpetrators, your Petitioner, Marcos Rodriguez and Edward Pozo. Both defendants were arrested in the State of New York.

The Attorney General for the State of Rhode Island made an extradition request for Edward Pozo. No request was filed for the extradition of Marcos Rodriguez.

The Grand Jury in the State of Rhode Island returned the instant indictment (Exhibit A). This indictment did not charge Marcos Rodriguez with the crime of murder.

The Grand Jury in the State of New York returned an indictment against Petitioner, Marcos Rodriguez, charging felony murder. The underlying felony was the kidnapping in the State of Rhode Island. This indictment did not charge Marcos Rodriguez with the substantive crime of kidnapping.

The Grand Jury in each state considered the evidence during the same time period and each indictment was filed at approximately the same time.

In December 2001, Petitioner was tried and convicted in New York of second-degree felony murder and was sentenced to serve twenty-five years to life. Under the Interstate Agreement on Detainers Act, your Petitioner was subsequently brought to Rhode Island to be tried for the underlying act of kidnapping.

Petitioner moved, under Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure to dismiss the indictment on double jeopardy grounds.

An evidentiary hearing was held on January 30, 2004 and February 3, 2004. An order denying defendant's motion was entered on April 18, 2005. A copy of that order is attached as Exhibit C.

The defendant moved the Supreme Court of the State of Rhode Island to stay his criminal trial pending appeal. That motion was granted on April 28, 2005.

On or about March 8, 2007, the Supreme Court of the State of Rhode Island denied Petitioner's appeal. (See Exhibit B).

13. The grounds stated above were presented.

14. Currently, I do not have any pending petitions or appeals, either state or federal.

15. At all stages, I was represented by Raymond Sussman, who was admitted pro hac vice. He is a New York attorney. His current address is 4523 Avenue H, Brooklyn, New York 11234. I anticipate he will move this court to represent me, pro hac vice.

16. I have not been sentenced in the State of Rhode Island.

17. I am presently serving a sentence of 25 years to life in the State of New York for the same offense. The Supreme Court of the State of New York, Bronx County imposed that sentence in December 2001. I hope to file a petition attacking that judgment in the future when I return to New York. I am currently in Rhode Island pursuant to the Interstate Agreement on Detainers Act.

**WHEREFORE**, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

Raymond S. Sussman
Attorney

I declare under penalty of perjury that the foregoing is true and correct. Executed on:

August 30th, 2007

Marcos Rodriguez

# EXHIBIT A

IN THE SUPERIOR COURT FOR THE
STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
PROVIDENCE COUNTY

STATE OF RHODE ISLAND

V. IND. NO. P1/2000- 2232A & B

MARCOS RODRIGUEZ, alias John Doe (A)
EDWARD POZO, alias John Doe (B)

The Grand Jury of the State of Rhode Island and Providence Plantations charges:

That MARCOS RODRIGUEZ, alias John Doe and EDWARD POZO, alias John Doe, both of Providence County, on or about the 23rd day of May, 1999, at Providence, in the County of Providence, did with intent to extort money or other valuable consideration, without lawful authority kidnap Ricardo Gomez , in violation of section 11-26-2 of the General Laws of Rhode Island, 1956, as amended (Reenactment of 1994).

COUNT 2

That MARCOS RODRIGUEZ, alias John Doe and EDWARD POZO, alias John Doe, both of Providence County, on or about the 23rd day of May, 1999, at Providence, in the County of Providence, did agree, combine, confederate, contrive or conspire to commit the crime of kidnapping, in violation of sections 11-1-6 and 11-26-2 of the General Laws of Rhode Island, 1956, as amended (Reenactment of 1994).

Special Assistant Attorney General
Craig Montecalvo

# EXHIBIT B

**Supreme Court**

No. 2004-190-C.A.
(P1/00-2232A)

| | |
|---|---|
| State | : |
| v. | : |
| Marcos Rodriguez. | : |

Present: Williams, C.J., Goldberg, Flaherty, Suttell, and Robinson, JJ.

**OPINION**

**Justice Suttell, for the Court.** We consider in this case whether a defendant who has been convicted previously in the State of New York of second-degree felony murder, the predicate felony being kidnapping, also may be tried in Rhode Island for the same kidnapping, or whether the Rhode Island prosecution places him twice in jeopardy for the same offense in violation of both the United States[1] and Rhode Island Constitutions.[2]

The defendant, Marcos Rodriguez, appeals from an order of the Superior Court denying his motion to dismiss one count of an indictment, charging him with kidnapping with the intent to extort.[3] Mr. Rodriguez contends that the kidnapping indictment impermissibly subjects him to double jeopardy because he previously was prosecuted for this offense by way of his felony-murder conviction in New York. We conclude, however, that under the principle of dual

---

[1] The Fifth Amendment to the United States Constitution says, in part: No person shall "be subject for the same offense to be twice put in jeopardy of life or limb."

[2] Article 1, section 7 of the Rhode Island Constitution says, in pertinent part: "No person shall be subject for the same offense to be twice put in jeopardy."

[3] The defendant did not seek to dismiss the second count of the indictment, charging him with conspiracy to commit the crime of kidnapping. He was alleged to have conspired with Edward Pozo. According to the Attorney General, Pozo gave a statement to the Providence police on December 8, 1999, in which he admitted his participation in the abduction of Ricardo Gomez. Apparently Mr. Pozo later absconded; he remains a fugitive.

sovereignty, the same villainous act may give rise to separate offenses in two jurisdictions. Accordingly, we affirm.

## I

## Facts and Procedural History

The relevant facts supporting Mr. Rodriguez's defense of double jeopardy are not in substantial dispute. On or around May 23, 1999, Ricardo Gomez was kidnapped in Rhode Island. Two days later, his remains, hands and feet bound and burned beyond recognition, were discovered under the Whitestone Bridge in the Bronx, New York. After conducting concurrent investigations, police officials in New York and Rhode Island identified defendant as a perpetrator, theorizing that he kidnapped Mr. Gomez from Rhode Island and murdered him over an outstanding debt allegedly incurred in a transaction for cocaine. In December 2001, Rodriguez was tried and convicted in New York of second-degree felony murder and was sentenced to serve twenty-five years to life in a New York prison. Under the Interstate Agreement on Detainers Act,[4] defendant subsequently was brought to Rhode Island to be tried for the offenses of kidnapping with the intent to extort money[5] and conspiracy to commit the crime of kidnapping, for which he previously had been indicted in Rhode Island.

Before the Superior Court in Rhode Island, Rodriguez moved, under Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure, to dismiss the kidnapping count on double jeopardy

[4] See G.L. 1956 § 13-13-2, Article I ("[I]t is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of [outstanding] charges [against prisoner detainers] and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.").

[5] See G.L. 1956 § 11-26-2, which reads:

> "**Kidnapping with intent to extort.** – Whoever commits any of the offenses mentioned in this chapter with intent to extort money or other valuable thing shall be guilty of a felony, and, upon conviction, shall be punished by imprisonment for life or for any term not less than five (5) years."

grounds, arguing that federal and state constitutional provisions precluded the State of Rhode Island from prosecuting him for the kidnapping of Ricardo Gomez. He reasoned that because he already had been prosecuted and punished for felony murder in New York, the underlying felony being Gomez's kidnapping, the Rhode Island indictment placed him twice in jeopardy for the same offense. Moreover, Rodriguez maintained that the collaborative efforts of New York and Rhode Island officials to prosecute him essentially created a merger of the two jurisdictions, thereby negating the doctrine of dual sovereignty.

An evidentiary hearing on defendant's motion was held on January 30, 2004, and February 3, 2004. After considering arguments from counsel, the motion justice denied defendant's motion to dismiss, holding that the cooperative efforts of Rhode Island and New York officials in investigating and prosecuting defendant did not defeat the dual sovereignty rule. The motion justice also rejected defendant's substantive double jeopardy argument that extortionate kidnapping was a lesser-included offense of his New York felony-murder conviction. An order denying defendant's motion was entered on April 18, 2005, from which defendant prematurely appealed.[6]

## II

## Standard of Review

We preface our consideration of defendant's constitutional arguments by noting that we have jurisdiction over this appeal under Abney v. United States, 431 U.S. 651, 659, 662 (1977) and State v. Berberian, 122 R.I. 693, 696-97, 411 A.2d 308, 309-10 (1980). "While a denial of a

[6] The defendant filed his notice of appeal on March 29, 2004, more than a year before an order denying defendant's motion was entered. Although defendant's appeal was premature, "[t]his Court generally has overlooked the premature filing of a notice of appeal." McBurney v. The GM Card, 869 A.2d 586, 589 n.3 (R.I. 2005) (citing Russell v. Kalian, 414 A.2d 462, 464 (R.I. 1980)). Accordingly, defendant's appeal is properly before us.

motion to dismiss a criminal action is not a final judgment from which an appeal may be taken, this [C]ourt has stated that when the motion to dismiss is based upon double-jeopardy and collateral-estoppel grounds * * * the [C]ourt will allow an immediate appeal." State v. Harrington, 705 A.2d 998, 998 (R.I. 1997) (mem.); see also State v. Godette, 751 A.2d 742, 745-46 (R.I. 2000). We also adhere to the standard that this Court engages in a de novo review, "with respect to questions of law and mixed questions of law and fact involving constitutional issues * * *." State v. Snell, 892 A.2d 108, 115 (R.I. 2006); see also State v. Campbell, 691 A.2d 564, 569 (R.I. 1997).

## III

## Discussion

Advancing the same arguments on appeal as he did before the motion justice, Rodriguez first asserts that Rhode Island is barred from prosecuting him for the kidnapping of Ricardo Gomez because of his previous conviction in New York for felony murder, the underlying felony being the same kidnapping that Rhode Island now seeks to pursue. The defendant relies on a line of United States Supreme Court cases to support his contention that double jeopardy bars prosecution for a lesser-included offense, e.g., kidnapping, after conviction for a greater offense, e.g., felony murder. See Lewis v. United States, 523 U.S. 155, 177 (1998) (Scalia, J. and Thomas, J., concurring) ("[D]ouble jeopardy law treats greater and lesser included offenses as the same, * * * so that a person tried for felony murder cannot subsequently be prosecuted for the armed robbery that constituted the charged felony. That is fair enough; * * *."); Whalen v. United States, 445 U.S. 684, 693-94 (1980); Harris v. Oklahoma, 433 U.S. 682, 682 (1977) (per curiam); Blockburger v. United States, 284 U.S. 299, 304 (1932); see also State v. Doyon, 416 A.2d 130, 134 (R.I. 1980) (underlying felony of arson merges with felony murder because only

one of the offenses required proof of a fact the other did not); State v. Innis, 120 R.I. 641, 658, 391 A.2d 1158, 1167 (1978) ("defendant may not be convicted of both murder in the first degree under a felony murder theory and the underlying felony of robbery"), vacated on other grounds, Rhode Island v. Innis, 446 U.S. 291 (1980). The defendant also asserts that Rhode Island "waived any claim to a constitutional right of dual sovereignty" by and through the conduct of its law enforcement and prosecutorial officials in cooperating with New York officials to convict defendant. Because we deem the dual sovereignty principle dispositive of defendant's double jeopardy argument, we begin our analysis by addressing the doctrine of dual sovereignty.

**A. Dual Sovereignty**

Dual sovereignty is a concept firmly embedded in our constitutional jurisprudence, deriving from the reality that each state was an independent political entity before the United States Constitution was ratified.[7] See Printz v. United States, 521 U.S. 898, 918-19 (1997). Although the several states surrendered many of their sovereign powers "in order to form a more perfect union," U.S. Const., Preamble, they retained "a residuary and inviolable sovereignty." Printz, 521 U.S. at 919 (quoting The Federalist No. 39 (J. Madison)). At first, residual state sovereignty largely was implicit "in the Constitution's conferral upon Congress of not all governmental powers, but only discrete, enumerated ones * * *" but later "was rendered express by the Tenth Amendment's assertion that '[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.'" Printz, 521 U.S. at 919.

As separate sovereigns, the federal government and each state possess, "the power, inherent in any sovereign, independently to determine what shall be an offense against its

[7] Rhode Island ratified the Constitution on May 29, 1790.

authority and to punish such offenses, and in doing so each 'is exercising its own sovereignty, not that of the other.'" United States v. Wheeler, 435 U.S. 313, 320 (1978) (quoting United States v. Lanza, 260 U.S. 377, 382 (1922)). Thus, "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" Heath v. Alabama, 474 U.S. 82, 88 (1985) (quoting Lanza, 260 U.S. at 382).

Although the federal Double Jeopardy Clause, which applies to the states through the Fourteenth Amendment, provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb," U.S. Const. Amend. V, the United States Supreme Court repeatedly has held that even identical offenses are not considered the "same offense" within the meaning of double jeopardy if they are prosecuted by independent sovereigns. See Heath, 474 U.S. at 88 (successive state-state prosecutions); Wheeler, 435 U.S. at 330 (successive Navajo tribal court-federal prosecutions); Bartkus v. Illinois, 359 U.S. 121, 136 (1959) (successive federal-state prosecutions); United States v. Rezaq, 134 F.3d 1121, 1128 (D.C. Cir. 1998) (successive foreign-federal prosecutions). Moreover, it is well established by this Court that "Rhode Island cases have hewed closely to federal double-jeopardy law when applying the analogous clause in the Rhode Island Constitution." State v. Rodriguez, 822 A.2d 894, 906 (R.I. 2003). Accordingly, under both federal and state constitutional standards, although double jeopardy forecloses multiple prosecutions for the same offense by the same sovereign, it does not prohibit successive prosecutions by separate sovereigns. See Heath, 474 U.S. at 87-88. As the United States Supreme Court instructs, "when the same act transgresses the laws of two sovereigns, 'it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable.'" Id. at 88 (quoting Moore v. Illinois, 55 U.S. (14 How.) 13, 20 (1852)).

The crucial question in determining the applicability of the dual sovereignty doctrine is whether the entity that seeks to prosecute a defendant for the same course of conduct, for which another entity previously has subjected the defendant to jeopardy, draws its authority to punish the offender from a distinct source of power. Heath, 474 U.S. at 88; see, e.g., Wheeler, 435 U.S. at 320; Waller v. Florida, 397 U.S. 387, 393 (1970); Puerto Rico v. Shell Co., 302 U.S. 253, 264 (1937); Lanza, 260 U.S. at 382. Clearly, states are separate sovereigns with respect to the federal government because each state's power to prosecute is derived from its own "inherent sovereignty," not from the federal government. Wheeler, 435 U.S. at 320 n.14. Only more recently, however, has the United States Supreme Court articulated the applicability of the dual sovereignty doctrine with respect to successive prosecutions under the laws of different states. Heath, 474 U.S. at 88-89. Mindful of the importance of the basis of authority inquiry described above, the Court in Heath explained that "States are no less sovereign with respect to each other than they are with respect to the Federal Government." Id. at 89. The power of states to prosecute criminal cases derives from "separate and independent sources of power and authority originally belonging to them before admission to the Union and preserved to them by the Tenth Amendment." Heath, 474 U.S. at 89.

Consistent with this analysis, the Supreme Court in Heath held that "[t]he dual sovereignty doctrine, as originally articulated and consistently applied by this Court, compels the conclusion that successive prosecutions by two States for the same conduct are not barred by the Double Jeopardy Clause." Heath, 474 U.S. at 88. To hold otherwise, the Court announced:

> "'would be a shocking and untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines.'
>
> "* * * A State's interest in vindicating its sovereign authority through enforcement of its laws by definition can never be satisfied by another State's enforcement of its own laws. Just as

> the Federal Government has the right to decide that a state prosecution has not vindicated a violation of the 'peace and dignity' of the Federal Government, a State must be entitled to decide that a prosecution by another State has not satisfied its legitimate sovereign interest." Id. at 93 (quoting Bartkus, 359 U.S. at 137).

### B. The Bartkus Exception

The Supreme Court has insinuated an incommodious exception to the principle of dual sovereignty. In Bartkus, Justice Frankfurter suggested that dual state and federal prosecutions might run afoul of the general rule affirming such prosecutions if one authority was acting as a "tool" of the other, or if the state prosecution merely was "a sham and a cover for a federal prosecution." Bartkus, 359 U.S. at 123-24. Although a number of courts have inferred an exception to the dual sovereignty rule from this language in Bartkus, see United States v. Raymer, 941 F.2d 1031, 1037 (10th Cir. 1991); United States v. Bernhardt, 831 F.2d 181, 182 (9th Cir. 1987), the exception is considered extremely narrow and difficult to prove.[8] See United States v. Rashed, 234 F.3d 1280, 1282 (D.C. Cir. 2000); United States v. Guzman, 85 F.3d 823, 827 (1st Cir. 1996); United States v. Figueroa-Soto, 938 F.2d 1015, 1019 (9th Cir. 1991). As articulated by the First Circuit Court of Appeals in Guzman, the exception is limited "to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings." Guzman, 85 F.3d at 827. However, even in Guzman, in which the evidence indicated that an agent of the United States traveled to the island of St. Maarten, alerted St. Maarten police to the defendant's presence on a ship smuggling drugs, participated in a search for drugs on board, and testified at trial, the court held that those facts demonstrated, "nothing more than the rendering of routine

---

[8] Some courts have gone as far as to question whether the exception exists at all. See United States v. Brocksmith, 991 F.2d 1363, 1366 (7th Cir. 1993); United States v. Patterson, 809 F.2d 244, 247 n.2 (5th Cir. 1987).

intergovernmental assistance." Guzman, 85 F.3d at 828. The court concluded that "[c]ooperative law enforcement efforts between independent sovereigns are commendable, and, without more, such efforts will not furnish a legally adequate basis for invoking the Bartkus exception to the dual sovereign rule." Id.

In the instant case, defendant urges this Court to rule that the dual sovereignty doctrine does not apply because of the joint efforts of New York and Rhode Island officials to prosecute defendant. The defendant asserts that "[e]ach state acted on behalf of the other[,]" and that "the conduct of the law enforcement officials merged the prosecutions to such an overlapping extent that they were no longer separate." Accordingly, defendant contends that Rhode Island "has waived any right it may have had pursuant to the doctrine of dual sovereignty."

Based upon our de novo review of the record in this case, we concur with the motion justice that defendant has not presented sufficient evidence to warrant an application of the Bartkus exception. As the motion justice articulated in his decision, the evidence suggested that the victim, Ricardo Gomez, was kidnapped from Rhode Island and remained,

> "in continuous kidnapped custody until he was killed. Wherever the fatal blow was struck or Ricardo Gomez drew his last breath, the presence of his remains in New York gave that state the strongest prima facie claim of jurisdiction to prosecute the homicide. There is no evidence what[so]ever that Rhode Island prosecutorial authority dominated or manipulated the New York law enforcement officers or prosecutors in their investigation and prosecution of a person accused of murder, over which Rhode Island had at best a highly questionable jurisdiction, so that the New York prosecution was a sham."

Nonetheless, defendant submits that certain events demonstrate the extent to which the Rhode Island Attorney General and the New York District Attorney collaborated to bring about successive prosecutions for the murder and kidnapping of Ricardo Gomez. According to the record, defendant and his cohort, Edward Pozo, were both indicted in Rhode Island for

extortionate kidnapping and conspiracy in June of 2000. Although Mr. Pozo was extradited to Rhode Island, defendant remained in New York to await trial for the murder of Ricardo Gomez. The defendant insists that the decision by the Attorney General in Rhode Island to extradite Mr. Pozo, and not defendant, implicitly evinces an agreement with the District Attorney in New York to divide the prosecutions for murder and kidnapping between the two jurisdictions. Moreover, defendant maintains that each jurisdiction's offer of immunity to Martha Villalona, defendant's girlfriend, for her alleged participation in the kidnapping, in exchange for her testimony, further illustrates the existence of this alleged agreement.

Contrary to the defendant's assertion, however, we do not infer from the evidence that any surreptitious agreement, either express or implied, existed between the prosecutors in Rhode Island and New York to prosecute the defendant successively for murder and kidnapping. We fail to see how the extradition of Mr. Pozo, or the immunity offered to Ms. Villalona, demonstrates a merger of prosecutorial effort arising to such an insidious level as to devastate the sovereignty of either jurisdiction. Despite the defendant's allegations, we agree with the trial justice's findings that:

> "At best, all the defendant shows is mutual cooperation between the two states to investigate and prosecute the defendant for the respective charges, in which each jurisdiction had the greater interest.
>
> "* * *
>
> "The conduct of police and prosecutors * * * [has been] shown to be nothing more than the type of routine cooperation commended by the court in United States v. Guzman * * *. The purely speculative conclusory allegations of the defendant * * * do not demonstrate that either state was acting as the prosecutorial tool of the other."

## IV

## Conclusion

Because we discern no circumstance warranting an exception to the dual sovereignty doctrine, we are satisfied that the motion justice properly denied the defendant's motion to dismiss the kidnapping with intent to extort count from the Rhode Island indictment. It therefore is unnecessary to address the defendant's substantive double jeopardy argument raised on appeal. Accordingly, we affirm the order denying the defendant's motion to dismiss and remand the papers to the Superior Court.

# EXHIBIT A

IN THE SUPERIOR COURT FOR THE
STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
PROVIDENCE COUNTY

STATE OF RHODE ISLAND

V. IND. NO. P1/2000- 2232A & B

MARCOS RODRIGUEZ, alias John Doe (A)
EDWARD POZO, alias John Doe (B)

The Grand Jury of the State of Rhode Island and Providence Plantations charges:

That MARCOS RODRIGUEZ, alias John Doe and EDWARD POZO, alias John Doe, both of Providence County, on or about the 23rd day of May, 1999, at Providence, in the County of Providence, did with intent to extort money or other valuable consideration, without lawful authority kidnap Ricardo Gomez , in violation of section 11-26-2 of the General Laws of Rhode Island, 1956, as amended (Reenactment of 1994).

COUNT 2

That MARCOS RODRIGUEZ, alias John Doe and EDWARD POZO, alias John Doe, both of Providence County, on or about the 23rd day of May, 1999, at Providence, in the County of Providence, did agree, combine, confederate, contrive or conspire to commit the crime of kidnapping, in violation of sections 11-1-6 and 11-26-2 of the General Laws of Rhode Island, 1956, as amended (Reenactment of 1994).

Special Assistant Attorney General
Craig Montecalvo

# EXHIBIT B

**Supreme Court**

No. 2004-190-C.A.
(P1/00-2232A)

State :

v. :

Marcos Rodriguez. :

Present: Williams, C.J., Goldberg, Flaherty, Suttell, and Robinson, JJ.

**OPINION**

**Justice Suttell, for the Court.** We consider in this case whether a defendant who has been convicted previously in the State of New York of second-degree felony murder, the predicate felony being kidnapping, also may be tried in Rhode Island for the same kidnapping, or whether the Rhode Island prosecution places him twice in jeopardy for the same offense in violation of both the United States[1] and Rhode Island Constitutions.[2]

The defendant, Marcos Rodriguez, appeals from an order of the Superior Court denying his motion to dismiss one count of an indictment, charging him with kidnapping with the intent to extort.[3] Mr. Rodriguez contends that the kidnapping indictment impermissibly subjects him to double jeopardy because he previously was prosecuted for this offense by way of his felony-murder conviction in New York. We conclude, however, that under the principle of dual

[1] The Fifth Amendment to the United States Constitution says, in part: No person shall "be subject for the same offense to be twice put in jeopardy of life or limb."
[2] Article 1, section 7 of the Rhode Island Constitution says, in pertinent part: "No person shall be subject for the same offense to be twice put in jeopardy."
[3] The defendant did not seek to dismiss the second count of the indictment, charging him with conspiracy to commit the crime of kidnapping. He was alleged to have conspired with Edward Pozo. According to the Attorney General, Pozo gave a statement to the Providence police on December 8, 1999, in which he admitted his participation in the abduction of Ricardo Gomez. Apparently Mr. Pozo later absconded; he remains a fugitive.

sovereignty, the same villainous act may give rise to separate offenses in two jurisdictions. Accordingly, we affirm.

## I

## Facts and Procedural History

The relevant facts supporting Mr. Rodriguez's defense of double jeopardy are not in substantial dispute. On or around May 23, 1999, Ricardo Gomez was kidnapped in Rhode Island. Two days later, his remains, hands and feet bound and burned beyond recognition, were discovered under the Whitestone Bridge in the Bronx, New York. After conducting concurrent investigations, police officials in New York and Rhode Island identified defendant as a perpetrator, theorizing that he kidnapped Mr. Gomez from Rhode Island and murdered him over an outstanding debt allegedly incurred in a transaction for cocaine. In December 2001, Rodriguez was tried and convicted in New York of second-degree felony murder and was sentenced to serve twenty-five years to life in a New York prison. Under the Interstate Agreement on Detainers Act,[4] defendant subsequently was brought to Rhode Island to be tried for the offenses of kidnapping with the intent to extort money[5] and conspiracy to commit the crime of kidnapping, for which he previously had been indicted in Rhode Island.

Before the Superior Court in Rhode Island, Rodriguez moved, under Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure, to dismiss the kidnapping count on double jeopardy

[4] See G.L. 1956 § 13-13-2, Article I ("[I]t is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of [outstanding] charges [against prisoner detainers] and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.").

[5] See G.L. 1956 § 11-26-2, which reads:

> "**Kidnapping with intent to extort.** – Whoever commits any of the offenses mentioned in this chapter with intent to extort money or other valuable thing shall be guilty of a felony, and, upon conviction, shall be punished by imprisonment for life or for any term not less than five (5) years."

grounds, arguing that federal and state constitutional provisions precluded the State of Rhode Island from prosecuting him for the kidnapping of Ricardo Gomez. He reasoned that because he already had been prosecuted and punished for felony murder in New York, the underlying felony being Gomez's kidnapping, the Rhode Island indictment placed him twice in jeopardy for the same offense. Moreover, Rodriguez maintained that the collaborative efforts of New York and Rhode Island officials to prosecute him essentially created a merger of the two jurisdictions, thereby negating the doctrine of dual sovereignty.

An evidentiary hearing on defendant's motion was held on January 30, 2004, and February 3, 2004. After considering arguments from counsel, the motion justice denied defendant's motion to dismiss, holding that the cooperative efforts of Rhode Island and New York officials in investigating and prosecuting defendant did not defeat the dual sovereignty rule. The motion justice also rejected defendant's substantive double jeopardy argument that extortionate kidnapping was a lesser-included offense of his New York felony-murder conviction. An order denying defendant's motion was entered on April 18, 2005, from which defendant prematurely appealed.[6]

## II

## Standard of Review

We preface our consideration of defendant's constitutional arguments by noting that we have jurisdiction over this appeal under Abney v. United States, 431 U.S. 651, 659, 662 (1977) and State v. Berberian, 122 R.I. 693, 696-97, 411 A.2d 308, 309-10 (1980). "While a denial of a

[6] The defendant filed his notice of appeal on March 29, 2004, more than a year before an order denying defendant's motion was entered. Although defendant's appeal was premature, "[t]his Court generally has overlooked the premature filing of a notice of appeal." McBurney v. The GM Card, 869 A.2d 586, 589 n.3 (R.I. 2005) (citing Russell v. Kalian, 414 A.2d 462, 464 (R.I. 1980)). Accordingly, defendant's appeal is properly before us.

motion to dismiss a criminal action is not a final judgment from which an appeal may be taken, this [C]ourt has stated that when the motion to dismiss is based upon double-jeopardy and collateral-estoppel grounds * * * the [C]ourt will allow an immediate appeal." State v. Harrington, 705 A.2d 998, 998 (R.I. 1997) (mem.); see also State v. Godette, 751 A.2d 742, 745-46 (R.I. 2000). We also adhere to the standard that this Court engages in a de novo review, "with respect to questions of law and mixed questions of law and fact involving constitutional issues * * *." State v. Snell, 892 A.2d 108, 115 (R.I. 2006); see also State v. Campbell, 691 A.2d 564, 569 (R.I. 1997).

## III

## Discussion

Advancing the same arguments on appeal as he did before the motion justice, Rodriguez first asserts that Rhode Island is barred from prosecuting him for the kidnapping of Ricardo Gomez because of his previous conviction in New York for felony murder, the underlying felony being the same kidnapping that Rhode Island now seeks to pursue. The defendant relies on a line of United States Supreme Court cases to support his contention that double jeopardy bars prosecution for a lesser-included offense, e.g., kidnapping, after conviction for a greater offense, e.g., felony murder. See Lewis v. United States, 523 U.S. 155, 177 (1998) (Scalia, J. and Thomas, J., concurring) ("[D]ouble jeopardy law treats greater and lesser included offenses as the same, * * * so that a person tried for felony murder cannot subsequently be prosecuted for the armed robbery that constituted the charged felony. That is fair enough; * * *."); Whalen v. United States, 445 U.S. 684, 693-94 (1980); Harris v. Oklahoma, 433 U.S. 682, 682 (1977) (per curiam); Blockburger v. United States, 284 U.S. 299, 304 (1932); see also State v. Doyon, 416 A.2d 130, 134 (R.I. 1980) (underlying felony of arson merges with felony murder because only

one of the offenses required proof of a fact the other did not); State v. Innis, 120 R.I. 641, 658, 391 A.2d 1158, 1167 (1978) ("defendant may not be convicted of both murder in the first degree under a felony murder theory and the underlying felony of robbery"), vacated on other grounds, Rhode Island v. Innis, 446 U.S. 291 (1980). The defendant also asserts that Rhode Island "waived any claim to a constitutional right of dual sovereignty" by and through the conduct of its law enforcement and prosecutorial officials in cooperating with New York officials to convict defendant. Because we deem the dual sovereignty principle dispositive of defendant's double jeopardy argument, we begin our analysis by addressing the doctrine of dual sovereignty.

### A. Dual Sovereignty

Dual sovereignty is a concept firmly embedded in our constitutional jurisprudence, deriving from the reality that each state was an independent political entity before the United States Constitution was ratified.[7] See Printz v. United States, 521 U.S. 898, 918-19 (1997). Although the several states surrendered many of their sovereign powers "in order to form a more perfect union," U.S. Const., Preamble, they retained "a residuary and inviolable sovereignty." Printz, 521 U.S. at 919 (quoting The Federalist No. 39 (J. Madison)). At first, residual state sovereignty largely was implicit "in the Constitution's conferral upon Congress of not all governmental powers, but only discrete, enumerated ones * * *" but later "was rendered express by the Tenth Amendment's assertion that '[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.'" Printz, 521 U.S. at 919.

As separate sovereigns, the federal government and each state possess, "the power, inherent in any sovereign, independently to determine what shall be an offense against its

[7] Rhode Island ratified the Constitution on May 29, 1790.

authority and to punish such offenses, and in doing so each 'is exercising its own sovereignty, not that of the other.'" United States v. Wheeler, 435 U.S. 313, 320 (1978) (quoting United States v. Lanza, 260 U.S. 377, 382 (1922)). Thus, "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" Heath v. Alabama, 474 U.S. 82, 88 (1985) (quoting Lanza, 260 U.S. at 382).

Although the federal Double Jeopardy Clause, which applies to the states through the Fourteenth Amendment, provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb," U.S. Const. Amend. V, the United States Supreme Court repeatedly has held that even identical offenses are not considered the "same offense" within the meaning of double jeopardy if they are prosecuted by independent sovereigns. See Heath, 474 U.S. at 88 (successive state-state prosecutions); Wheeler, 435 U.S. at 330 (successive Navajo tribal court-federal prosecutions); Bartkus v. Illinois, 359 U.S. 121, 136 (1959) (successive federal-state prosecutions); United States v. Rezaq, 134 F.3d 1121, 1128 (D.C. Cir. 1998) (successive foreign-federal prosecutions). Moreover, it is well established by this Court that "Rhode Island cases have hewed closely to federal double-jeopardy law when applying the analogous clause in the Rhode Island Constitution." State v. Rodriguez, 822 A.2d 894, 906 (R.I. 2003). Accordingly, under both federal and state constitutional standards, although double jeopardy forecloses multiple prosecutions for the same offense by the same sovereign, it does not prohibit successive prosecutions by separate sovereigns. See Heath, 474 U.S. at 87-88. As the United States Supreme Court instructs, "when the same act transgresses the laws of two sovereigns, 'it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable.'" Id. at 88 (quoting Moore v. Illinois, 55 U.S. (14 How.) 13, 20 (1852)).

The crucial question in determining the applicability of the dual sovereignty doctrine is whether the entity that seeks to prosecute a defendant for the same course of conduct, for which another entity previously has subjected the defendant to jeopardy, draws its authority to punish the offender from a distinct source of power. Heath, 474 U.S. at 88; see, e.g., Wheeler, 435 U.S. at 320; Waller v. Florida, 397 U.S. 387, 393 (1970); Puerto Rico v. Shell Co., 302 U.S. 253, 264 (1937); Lanza, 260 U.S. at 382. Clearly, states are separate sovereigns with respect to the federal government because each state's power to prosecute is derived from its own "inherent sovereignty," not from the federal government. Wheeler, 435 U.S. at 320 n.14. Only more recently, however, has the United States Supreme Court articulated the applicability of the dual sovereignty doctrine with respect to successive prosecutions under the laws of different states. Heath, 474 U.S. at 88-89. Mindful of the importance of the basis of authority inquiry described above, the Court in Heath explained that "States are no less sovereign with respect to each other than they are with respect to the Federal Government." Id. at 89. The power of states to prosecute criminal cases derives from "separate and independent sources of power and authority originally belonging to them before admission to the Union and preserved to them by the Tenth Amendment." Heath, 474 U.S. at 89.

Consistent with this analysis, the Supreme Court in Heath held that "[t]he dual sovereignty doctrine, as originally articulated and consistently applied by this Court, compels the conclusion that successive prosecutions by two States for the same conduct are not barred by the Double Jeopardy Clause." Heath, 474 U.S. at 88. To hold otherwise, the Court announced:

> "'would be a shocking and untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines.'
>
> "* * * A State's interest in vindicating its sovereign authority through enforcement of its laws by definition can never be satisfied by another State's enforcement of its own laws. Just as

> the Federal Government has the right to decide that a state prosecution has not vindicated a violation of the 'peace and dignity' of the Federal Government, a State must be entitled to decide that a prosecution by another State has not satisfied its legitimate sovereign interest." Id. at 93 (quoting Bartkus, 359 U.S. at 137).

### B. The Bartkus Exception

The Supreme Court has insinuated an incommodious exception to the principle of dual sovereignty. In Bartkus, Justice Frankfurter suggested that dual state and federal prosecutions might run afoul of the general rule affirming such prosecutions if one authority was acting as a "tool" of the other, or if the state prosecution merely was "a sham and a cover for a federal prosecution." Bartkus, 359 U.S. at 123-24. Although a number of courts have inferred an exception to the dual sovereignty rule from this language in Bartkus, see United States v. Raymer, 941 F.2d 1031, 1037 (10th Cir. 1991); United States v. Bernhardt, 831 F.2d 181, 182 (9th Cir. 1987), the exception is considered extremely narrow and difficult to prove.[8] See United States v. Rashed, 234 F.3d 1280, 1282 (D.C. Cir. 2000); United States v. Guzman, 85 F.3d 823, 827 (1st Cir. 1996); United States v. Figueroa-Soto, 938 F.2d 1015, 1019 (9th Cir. 1991). As articulated by the First Circuit Court of Appeals in Guzman, the exception is limited "to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings." Guzman, 85 F.3d at 827. However, even in Guzman, in which the evidence indicated that an agent of the United States traveled to the island of St. Maarten, alerted St. Maarten police to the defendant's presence on a ship smuggling drugs, participated in a search for drugs on board, and testified at trial, the court held that those facts demonstrated, "nothing more than the rendering of routine

---

[8] Some courts have gone as far as to question whether the exception exists at all. See United States v. Brocksmith, 991 F.2d 1363, 1366 (7th Cir. 1993); United States v. Patterson, 809 F.2d 244, 247 n.2 (5th Cir. 1987).

intergovernmental assistance." Guzman, 85 F.3d at 828. The court concluded that "[c]ooperative law enforcement efforts between independent sovereigns are commendable, and, without more, such efforts will not furnish a legally adequate basis for invoking the Bartkus exception to the dual sovereign rule." Id.

In the instant case, defendant urges this Court to rule that the dual sovereignty doctrine does not apply because of the joint efforts of New York and Rhode Island officials to prosecute defendant. The defendant asserts that "[e]ach state acted on behalf of the other[,]" and that "the conduct of the law enforcement officials merged the prosecutions to such an overlapping extent that they were no longer separate." Accordingly, defendant contends that Rhode Island "has waived any right it may have had pursuant to the doctrine of dual sovereignty."

Based upon our de novo review of the record in this case, we concur with the motion justice that defendant has not presented sufficient evidence to warrant an application of the Bartkus exception. As the motion justice articulated in his decision, the evidence suggested that the victim, Ricardo Gomez, was kidnapped from Rhode Island and remained,

> "in continuous kidnapped custody until he was killed. Wherever the fatal blow was struck or Ricardo Gomez drew his last breath, the presence of his remains in New York gave that state the strongest prima facie claim of jurisdiction to prosecute the homicide. There is no evidence what[so]ever that Rhode Island prosecutorial authority dominated or manipulated the New York law enforcement officers or prosecutors in their investigation and prosecution of a person accused of murder, over which Rhode Island had at best a highly questionable jurisdiction, so that the New York prosecution was a sham."

Nonetheless, defendant submits that certain events demonstrate the extent to which the Rhode Island Attorney General and the New York District Attorney collaborated to bring about successive prosecutions for the murder and kidnapping of Ricardo Gomez. According to the record, defendant and his cohort, Edward Pozo, were both indicted in Rhode Island for

extortionate kidnapping and conspiracy in June of 2000. Although Mr. Pozo was extradited to Rhode Island, defendant remained in New York to await trial for the murder of Ricardo Gomez. The defendant insists that the decision by the Attorney General in Rhode Island to extradite Mr. Pozo, and not defendant, implicitly evinces an agreement with the District Attorney in New York to divide the prosecutions for murder and kidnapping between the two jurisdictions. Moreover, defendant maintains that each jurisdiction's offer of immunity to Martha Villalona, defendant's girlfriend, for her alleged participation in the kidnapping, in exchange for her testimony, further illustrates the existence of this alleged agreement.

Contrary to the defendant's assertion, however, we do not infer from the evidence that any surreptitious agreement, either express or implied, existed between the prosecutors in Rhode Island and New York to prosecute the defendant successively for murder and kidnapping. We fail to see how the extradition of Mr. Pozo, or the immunity offered to Ms. Villalona, demonstrates a merger of prosecutorial effort arising to such an insidious level as to devastate the sovereignty of either jurisdiction. Despite the defendant's allegations, we agree with the trial justice's findings that:

> "At best, all the defendant shows is mutual cooperation between the two states to investigate and prosecute the defendant for the respective charges, in which each jurisdiction had the greater interest.
>
> "* * *
>
> "The conduct of police and prosecutors * * * [has been] shown to be nothing more than the type of routine cooperation commended by the court in United States v. Guzman * * *. The purely speculative conclusory allegations of the defendant * * * do not demonstrate that either state was acting as the prosecutorial tool of the other."

## IV

## Conclusion

Because we discern no circumstance warranting an exception to the dual sovereignty doctrine, we are satisfied that the motion justice properly denied the defendant's motion to dismiss the kidnapping with intent to extort count from the Rhode Island indictment. It therefore is unnecessary to address the defendant's substantive double jeopardy argument raised on appeal. Accordingly, we affirm the order denying the defendant's motion to dismiss and remand the papers to the Superior Court.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

---

MARCOS RODRIGUEZ
Petitioner

VS.

WARDEN DAVID MCCAULEY AND THE STATE OF RHODE ISLAND,
Respondents

CA07-329 ML

---

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. 2254**

---

Respectfully submitted,

Raymond S. Sussman
Attorney for Marcos Rodriguez
Pro Hac Vice
4523 Avenue H
Brooklyn, New York 11234
Tel: (718) 338-3302

E. J. Terry McEnaney, Esq.
Local counsel
454 Broadway
Providence, Rhode Island 02909